**TRAILWAYS OF NEW ENGLAND, INC., Appellant,**

v.

**AMALGAMATED ASSOCIATION OF STREET, ELECTRIC RAILWAY AND MOTOR COACH EMPLOYEES OF AMERICA, AFL–CIO, DIVISION 1318, Appellee.**

**No. 6591.**

United States Court of Appeals
First Circuit.

Dec. 2, 1965.

---

Morris J. Levin, Washington, D. C., with whom Joseph J. Hurley, Boston, Mass., Richard R. Paradise, Betty Southard Murphy, Washington, D. C., Cargill, Masterman, Redmond & Cahill, Boston, Mass., and McInnis, Wilson, Munsion & Woods, Washington, D. C., were on the brief, for appellant.

Earle W. Putnam, Washington, D. C., with whom Arthur J. Flamm, John D. O'Reilly, III, and Segal & Flamm, Boston, Mass., were on the brief, for appellee.

Before ALDRICH, Chief Judge, and HASTIE* and McENTEE, Circuit Judges.

ALDRICH, Chief Judge.

This case raises again the question of court intervention in labor arbitration, sought on the ground that the arbitrators have nothing properly before them. In another decision this day we have held that an objecting party could not be heard until the arbitrator had decided against it. Camden Industries, Inc. v. Carpenters Local Union No. 1688, 1 Cir., 1965, 353 F.2d 178. In that case we were

unable to say "with positive assurance" that there could be nothing to be arbitrated. Appellant asserts that in the present case positive assurance exists.

The dispute between the parties originated in a strike protesting the suspension of an employee for alleged insubordination. The facts are set forth in our earlier opinion, Trailways of New England, Inc. v. Amalgamated Association of Street Railway Employees, 1 Cir., 1965, 343 F.2d 815, ordering the initial arbitration. Briefly, the strike was called in spite of the employer's requests that the union follow the grievance procedure provided for in the collective bargaining agreement. The employer thereupon discharged all striking employees and purported to rescind the agreement. At this point the union invoked the grievance procedure. The employer objected, not unnaturally feeling that the union had got religion too late. We held, however, that the matter must go to arbitration.

The arbitration board, hereinafter the board, first considered whether the strike was a violation of the agreement. It determined that it was, because the union had agreed to arbitrate before striking. The employer, contrary to the board, thereupon concluded that there was nothing further to arbitrate, and instituted the present action in the district court for a declaratory judgment to that effect. That court denied relief without opinion, and the employer appeals.

The agreement provided that "all grievances arising hereunder, including discharge, * * * shall be disposed of" by a procedure culminating in arbitration, the written decision of a majority of the board to "be final and binding on the parties to the dispute." It also provided that employees could be discharged "for cause."

It is the position of the union that as to each striker the board can determine "whether or not the discharge was for 'cause' within the meaning of the parties' agreement. Included in that ulti-

* Sitting by designation.

mate question were such issues as whether each grievant was, in fact, a participant, instigator, or leader of the work stoppage which the board had held to be in violation of the agreement, and if so involved, the circumstances, degree, and extent of his involvement. Also, whether the action of discharge, considered in the light of the record as a whole, including relevant aspects of the grievants' employment record with the Company, justified the penalty meted out, and if it did not, what award the board of arbitration should make in the case of each grievant."

The employer does not seriously quarrel with the union's contention that "cause" means "just cause." However, it argues, in effect, that for the board to conclude that participation in an unsanctioned strike was not just cause for discharge would be for the board "to exercise management prerogatives" not within its "jurisdiction." In other words, although the board has the final say whether conduct which is admittedly improper, but of debatable seriousness, is or is not sufficient "cause" for discharge, once the seriousness of the conduct passes a certain point it passes beyond the board's jurisdiction or power.

 Questions of arbitrability are not automatically resolved in the employer's favor by invoking the term "jurisdiction," any more than they are in the union's favor by asserting the existence of a "dispute." Cf. Camden Industries v. Carpenters Local Union No. 1688, supra. Initially we look to the agreement to see what was stated to be arbitrable. In the present case there is no ambiguity. Grievances include "discharge," with no exceptions. The employer's contention that the employees' misconduct was so serious that wholesale discharge was necessarily within its prerogative may well be thought sound. Arbitrators, however, even as courts, Fauntleroy v. Lum, 1908, 210 U.S. 230, 28 S.Ct. 641, 52 L.Ed. 1039 have "jurisdiction" to decide erroneously.

██ This case differs from Camden Industries in that here the arbitrability of the dispute and, therefore, the juris-

diction of the board is clear. The essence of the appellant's contention is merely that on the merits of the arbitrable issue no reasonable man could find against it. But the seeming onesidedness of an otherwise arbitrable issue is no sufficient reason for denying the arbitrator an opportunity to hear and decide the matter. We cannot diminish what the employer in terms relinquished to the arbitration board, or review, anticipatorily or otherwise, its alleged errors by saying it lacks power to make them.

Affirmed.